Filed 3/25/25  P. v. Pratt CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RYANT TRIMALE PRATT,<br><br>        Defendant and Appellant. | B338996<br><br>(Los Angeles County<br>Super. Ct. No. TA036565) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Walton, Judge.  Affirmed.

Ryant Trimale Pratt, in pro. per.; and Nancy Gaynor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————————

Ryant Pratt appeals from an order denying his Penal Code section 1172.6 petition for resentencing.[1]  His appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), and Pratt filed a supplemental brief arguing the trial court erred in denying his petition.  We consider Pratt's contentions and affirm the trial court order.

## FACTUAL AND PROCEDURAL BACKGROUND

### The underlying crime

We take the following facts from the opinion affirming Pratt's convictions on direct appeal.[2]  (*People v. Pratt* (July 1, 1998, B111400) [nonpub. opn.].)

"1.  *Facts*.

"Ahmad Amer owned the 95 Cent Plus Store.  On October 27, 1994, at approximately 7 p.m., the store was robbed.  Amer was not present at the time; he returned to the store shortly thereafter.  When Amer learned of the robbery, he became angry and began yelling.

---

[1]     All further undesignated statutory references are to the Penal Code.  Pratt's petition was filed pursuant to former section 1170.95.  Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

[2]     We refer to the Court of Appeal opinion only "for background purposes and to provide context" for Pratt's arguments.  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2, disapproved of on another ground in *People v. Patton* (Mar. 3, 2025, S279670) __ Cal.5th __ [2025 WL 666005].)  We do not rely on the facts in the opinion to review the trial court's determination of Pratt's eligibility for resentencing at the prima facie stage.  (*Flores*, at p. 988.)

"Appellant and other persons were outside the store, near some pay phones. Amer demanded they leave the area, but the persons refused. Amer went outside, taking with him a pair of scissors; he cut the phone lines. Appellant made statements such as, 'Blood, you cut the wire on a homey, like that. Why?' Appellant also said, '[Y]ou done this so I'm gonna do that, . . .' or, 'How would you like it if I do this, . . .' Appellant then shot Amer. Amer died from one gunshot wound to the head.

"At the time of the shooting, Twana Thomas and her cousin, Obie King, were near the store. Thomas identified appellant as the shooter. A police officer testified that soon after the killing, King identified appellant in a photo lineup as being the shooter. Amer's son identified appellant as being one of the persons near the pay phones.

"Josefa Patricia Escobar worked in a laundromat, located next door to the 95 Cent Plus Store. She identified appellant in a photo lineup as one of the people she saw minutes before the shooting.

"After the crime, appellant admitted to his girlfriend, Tameca Walker, he 'just smoked this fool at the 95 Cent Store.' Appellant owned a shirt consistent with the one described to have been worn by the killer.

"2. *Procedure.*

"Appellant was convicted of first degree murder and possession of a firearm by a felon. (Pen. Code, §§ 187, subd. (a), [former] 12021, subd. (a).) It was found true that appellant personally used a handgun. (Pen. Code, § 12022.5, subd. (a).) He admitted he had two prior serious (Pen. Code, § 667, subd. (a)(1)) and serious or violent felony convictions (Pen. Code, § 667,

subds. (b)–(i)).  Appellant was sentenced to 90 years to life in state prison."

*Resentencing*

In 2021, Pratt filed a petition for writ of habeas corpus, seeking resentencing pursuant to former section 1170.95.  He asserted he had been convicted under the natural and probable consequences doctrine, a felony murder theory, or another theory under which malice was imputed.

The People filed an opposition, arguing Pratt was not prosecuted pursuant to a felony murder or natural and probable consequences theory and the jury had not been instructed on either theory.  In support of the opposition, the People submitted a copy of the jury instructions from Pratt's trial.  As relevant here, the jury was instructed on the definition of murder (CALJIC No. 8.10); the definition of malice aforethought (CALJIC No. 8.11); deliberate and premeditated murder (CALJIC No. 8.20); unpremeditated murder of the second degree (CALJIC No. 8.30); implied malice second degree murder (CALJIC No. 8.31 [Second degree murder – Killing resulting from unlawful act dangerous to life]); duty of jury as to degree of murder (CALJIC No. 8.70); doubt whether first or second degree murder (CALJIC No. 8.71); unanimous agreement as to first or second degree murder (CALJIC No. 8.74); and personal use of a firearm (CALJIC No. 17.19).

The trial court appointed defense counsel.  Pratt filed a brief in support of his original petition.  Pratt argued he had established a prima facie showing of eligibility for resentencing because the jury was instructed with CALJIC No. 8.11 on implied malice.  Pratt asserted the instruction's "[n]atural and [p]robable consequences theory language for implied malice," allowed the

jury to convict him on a now-invalid theory.

In 2024, the trial court denied the petition at the prima facie stage after hearing argument. The court reviewed the court file, the information, the jury instructions, the verdict forms, and the parties' briefing. The court determined that Pratt was prosecuted as the actual perpetrator of the murder, not under a theory of natural and probable consequences or felony murder. The court further reasoned that although the defense argued for resentencing based on the jury instructions for second degree murder, the jury had rejected any second degree murder theory and instead found Pratt guilty of first degree murder. The jury also found true that Pratt personally used a gun to commit the murder. The court concluded: "So with the first-degree murder conviction, it implies that you were the only perpetrator and that you indeed had actual malice when they determined that you were guilty of murder in the first degree." The court therefore found Pratt ineligible for relief.

Pratt timely appealed. Court-appointed appellate counsel filed an opening brief that raised no issues and asked this court to independently review the record under *Delgadillo*, *supra*, 14 Cal.5th 216. We directed appellate counsel to send Pratt the record and a copy of the opening brief. We additionally advised that within 30 days of the date of the notice, Pratt could submit a supplemental brief or letter stating any grounds for an appeal, contentions, or arguments he wished this court to consider. Pratt timely submitted a supplemental brief.

## DISCUSSION

Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended section 188 to limit accomplice liability by eliminating theories of imputed malice as a basis for finding a defendant guilty of

5

murder.  Section 1172.6, subdivision (a), thus provides that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may petition to have the conviction vacated and to be resentenced. (See generally *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

A defendant commences the resentencing procedure by filing a petition declaring the defendant was prosecuted under a theory of imputed malice for murder, attempted murder, or manslaughter, and "could not presently be convicted of murder or attempted murder because of changes to Section 188 . . . ." (§ 1172.6, subd. (a)(1)–(3).)  If the trial court determines the petitioner made a prima facie case for relief, the court must issue an order to show cause and hold an evidentiary hearing within 60 days.  (*Id.*, subds. (c) & (d).)

The amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the actual killer or intended to kill.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Strong* (2022) 13 Cal.5th 698, 707; *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166, review granted May 1, 2024, S284232.)  And, while Senate Bill No. 1437 eliminated natural and probable consequences liability for second degree murder based on imputed malice, implied malice remains a valid theory of second degree murder liability.  (§ 188, subd. (a); *People v. Reyes* (2023) 14 Cal.5th 981, 990–991; *Gentile, supra*, 10 Cal.5th at p. 850; *People v. Werntz* (2023) 90 Cal.App.5th 1093,

6

1112, review granted Aug. 9, 2023, S280278; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

The record of conviction in this case demonstrates that Pratt was not convicted on an invalid theory. The jury was not instructed on the natural and probable consequences doctrine or a felony murder theory. Indeed, there was no theory of aiding and abetting or other accomplice liability presented to the jury. (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 893 [petitioner ineligible for relief where he alone attempted to commit murder].) The jury was not instructed on any theory under which malice could be imputed to Pratt. He was prosecuted as a sole perpetrator, and the jury necessarily found that he was the actual killer, demonstrated by the true finding on the personal gun use allegation. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 744.)

Moreover, the jury was instructed on only one theory of first degree murder: willful, deliberate and premeditated killing with express malice aforethought. The jury was informed that to conclude Pratt was guilty of first degree murder, it was required to find "that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill," and, "[t]o constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." The jury could not have found Pratt guilty of first degree murder without determining that he acted with express malice.

On appeal, Pratt appears to contend, as he did in the trial court, that he made a prima facie showing because the jury was

7

instructed on an implied malice theory of second degree murder.[3] We reject this argument because *implied* malice theories of murder remain valid under current law and, in any event, the jury unequivocally determined Pratt acted with *express* malice when it found him guilty of first degree murder.

Finally, Pratt argues the trial court engaged in improper factfinding. We disagree. The court's ruling was permissibly based on the record of conviction and the court's own documents that demonstrated Pratt's ineligibility for resentencing relief as a matter of law. (*Lewis, supra*, 11 Cal.5th at pp. 971–972 [trial court may look at the record of conviction at prima facie stage and deny petition where court's own documents refute the allegations in the petition].) The trial court properly denied Pratt's section 1172.6 petition.

---

[3] The jury was instructed with CALJIC No. 8.11 on malice aforethought, which defined implied malice: "Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The phrase "natural consequences of the act" is not a reference to the natural and probable consequences theory of accomplice liability that was eliminated by Senate Bill No. 1437.

**DISPOSITION**

The trial court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

9